8

FILED

AUG - 4 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**POSTED ON WEBSITE**

**MEMORANDUM**

**N O T   F O R   P U B L I C A T I O N**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 10-10767-B-13 |
| Kenny Medina Ormonde and Thania Rodriguez Ormonde, | DC No. MHM-1 |
| Debtors. | |

**MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

This disposition is not appropriate for publication. Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee.

Geoffrey M. Adalian, Esq., appeared on behalf of the debtors, Kenny Medina Ormonde and Thania Rodriguez Ormonde.

Before the court is an objection by the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee") to confirmation of a chapter 13 plan (the "Plan") filed by the debtors, Kenny and Thania Ormonde (the "Debtors"). The Trustee contends that the Debtors have understated the amount of their monthly income in Part I of Form 22C, the Means Test (the "Objection"). Specifically, the Debtors did not include the unemployment compensation which Mrs. Ormonde receives from the State of California in the

calculation of Current Monthly Income (the "CMI"). The Debtors contend that this income is a "benefit under the Social Security Act," which should be excluded from the CMI. This exclusion causes the Debtors to be "below median income" for purposes of calculating the "applicable commitment period" of their Plan and the amount of "disposable income" which must be paid to unsecured creditors. For the reasons set forth below, the Objection will be conditionally sustained.

This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 1325[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(L).

**Background and Findings of Fact.**

The Debtors filed a petition on January 27, 2010, seeking relief from their creditors and a fresh start under chapter 13. With the petition, they filed the required schedules of assets and liabilities. Those schedules reveal that Mr. Ormonde is a schoolteacher earning a gross income of $5,957.25 per month. However, at the commencement of the case, Mrs. Ormonde was unemployed; she was receiving unemployment insurance benefits in the amount of $429 per week from the State of California (the "UIB"). Mrs. Ormonde's UIB were expected to terminate in March 2010. There is no evidence in the record to indicate whether Mrs. Ormonde is still unemployed and whether the UIB in fact terminated or were extended.

On schedule J, the Debtors report average monthly expenses, including payments for their mortgage, in the amount of $3,768.84. Without counting the UIB, this leaves a

---

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Publ. L. 109-8, Apr. 0, 2005, 119 Stat. 23.

monthly net income on schedule J, line 20, in the stated amount of $783.57. The Trustee does not object to any of the income or expenses reported on schedules I and J.

The Debtors also filed Official Form 22C entitled "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" (the "Means Test").[2] In chapter 13, the Means Test is used to determine, *inter alia*, how many years certain debtors must pay into a chapter 13 plan (the "applicable commitment period"). The Means Test is also used to calculate how much disposable income certain debtors must pay to their unsecured creditors over the term of the plan. In Part I, line 2 of the Means Test, the Debtors report Mr. Ormonde's "Gross wages, salary, tips, bonuses, overtime, commissions" to be $6,124.82. The amount stated for Mrs. Ormonde is $0. On line 8, under "Unemployment compensation," the amount reported for Mrs. Ormonde is $0.[3] Thus, the Debtors' current monthly income ("CMI") is stated on line 11 to be $6,124.82. Their annualized CMI is calculated in Part II, line 15 to be $73,497.84 (12 x $6,124.82). The "Applicable median family income" for a family of five is shown on line 16 to be $86,377. Thus, the Debtors' annualized CMI is stated to be substantially below the applicable median family income. Pursuant to Part III, line 23, the Debtors were therefore not required to complete Parts IV, V or VI of the Means Test for the purpose of calculating their disposable income.

Attached to the Means Test is a statement of "Current Monthly Income Details for the Debtor" and a statement of "Current Monthly Income Details for the Debtor's Spouse." Those statements list the monies which both of the Debtors have received each month for the six-month period preceding commencement of the bankruptcy case. Mrs.

---

[2]The "Means Test" is frequently referred to as Form 22C or Form B22C.

[3]The drafters of Form 22C did not take a position on the issue of whether or not UIB were "benefits received under the Social Security Act" by adopting an agnostic approach. The form provides debtors with the option of, either including UIB in their CMI by listing the benefits on line 8, or inserting the UIB amount in a subsection of line 8 which is not incorporated into the CMI calculation.

3

Ormonde lists UIB from the last six months averaging $1,239.33 per month.

The Plan provides for monthly payments to the Trustee in the amount of $700 for a "commitment period" of 60 months. The Debtors' two automobile payments will be made through the Plan and their mortgage payment will be paid directly to the creditors outside of the Plan. They propose to value and eventually strip off the second trust deed on their home. The unsecured creditors will receive a 0% distribution on claims estimated to total $262,816.50 (including the unsecured junior mortgage on their residence). At the conclusion of the Plan, the Debtors will request a complete discharge of their unsecured debts pursuant to § 1328(a).

**Issue.**

The sole question presented to the court is whether Mrs. Ormonde's UIB must be included in the calculation of CMI. There are no disputed issues of fact. The Debtors contend that the UIB should be excluded from the calculation of CMI because those benefits constitute "benefits received under the Social Security Act" (the "SSA"), which are statutorily excluded from CMI. If the UIB are included in the CMI calculation, then the Debtors would be "above median income" for the purpose of determining both the applicable commitment period of the Plan and the disposable income which must be distributed to unsecured creditors. The Debtors' Plan already provides for payment of their monthly "net income" (schedule J, line 16) to fund the Plan, but the Trustee contends that the unsecured creditors are entitled to receive the disposable income that would be calculated in Parts IV, V, and VI of the Means Test.

**The Applicable Law.**

Bankruptcy Code subsection 1325(b)(1) states in pertinent part that if the chapter 13 trustee or an unsecured creditor objects to plan confirmation, then the court may not approve the plan unless, as of the effective date of the plan, unsecured creditors either get paid in full or receive at least the benefit of the debtor's projected disposable income over

4

1 the applicable commitment period.[4]

2      The term "disposable income" is defined in subsection 1325(b)(2) to mean
3 "current monthly income received by the debtor . . . less amounts reasonably necessary to
4 be expended." The term "current monthly income," or CMI, is defined in subsection
5 101(10A)(A) to mean the "average monthly income from all sources that the debtor
6 receives . . . without regard to whether such income is taxable income, derived during the
7 [preceding] 6-month period . . . ." The statutory definition of CMI specifically excludes
8 income received from certain sources, including SSA benefits, payments to victims of
9 war crimes or crimes against humanity, and payments to victims of international
10 terrorism. §101(10A)(B).

11      The amount of a debtor's CMI, specifically the debtor's status as being above or
12 below median income, determines the method for calculating the expenses, or the
13 "amounts reasonably necessary to be expended," which can be deducted from CMI to
14 arrive at the bottom line disposable income. For a below-median-income debtor, the
15 deductions are based on a "reasonably necessary" test and the court can generally look to
16 schedules I and J to begin that inquiry. For an above-median-income debtor, subsection
17 1325(b)(3) provides that the allowable deductions must be determined with reference to
18 subsection 707(b)(2). To fulfill that function, the Debtors would be required to complete
19 the Means Test.

20 **Analysis.**

21      The Debtors argue that the UIB are "benefits received under the Social Security

22

23      [4]Section 1325(b)(1) states:
24      (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the
confirmation of the plan, then the court may not approve the plan unless, as of the effective date
25 of the plan–
          (A) the value of the property to be distributed under the plan on account of such
26      claim is not less than the amount of such claim; or
          (B) the plan provides that all of the debtor's *projected disposable income* to be
27      *received in the applicable commitment period* . . . will be applied to make payments to
28      unsecured creditors under the plan. (Emphasis added.)

5

Act" and are therefore expressly excluded from the definition of CMI by operation of subsection 101(10A)(B) of the Bankruptcy Code. The Trustee argues that the UIB are not "benefits received under the Social Security Act." The issue is complex because the stated exception in § 101(10A)(B) is ambiguous. "The combination of the historical link to the [Social Security Act] and the element of federal-state collaboration on behalf of unemployment compensation gives rise to the ambiguity." *In re Kucharz*, 418 B.R. 635, 641 (Bankr. C.D.Ill 2009).

The bankruptcy courts appear to be divided on the issue. The first two courts to decide the issue ruled that state unemployment compensation is a "benefit received under the Social Security Act," which should be excluded from CMI. *See In re Sorrell*, 359 B.R. 167 (Bankr. S.D.Ohio 2007); *In re Mungar*, 370 B.R. 21 (Bankr. D.Mass. 2007). However, five other courts have subsequently ruled the other way. *See In re Baden*, 396 B.R. 617 (Bankr. M.D.Pa. 2008); *In re Kucharz*, *supra* 418 B.R. 635 and three unpublished decisions that follow *Baden* and *Kucharz*, *In re Rose*, 2010 WL 2600591 (Bankr. N.D.Ga.); *In re Nance*, 2010 WL 2079653 (Bankr. S.D.Ind.); and *In re Winkles*, 2010 WL 2680895 (Bankr. S.D.Ill.).[5] The court cannot find any record that the issue has been decided by an appellate court or a bankruptcy court in this state.

The problem lies in the fact that unemployment benefits are not expressly identified in the statute as an exclusion from CMI. Those courts that decided in favor of excluding unemployment benefits from CMI did so by speculating on legislative intent. They also focused on the broad language used in subsection 101(10A)(B) and the fact that state-run unemployment insurance programs are essentially mandated by the SSA. *See Sorrell*, 359 B.R. at 181. The courts that went the other way looked at the plain meaning of the statute and considered the numerous distinctions between the federal social security system and the state-run programs for providing unemployment benefits. *See Kucharz*,

---

[5]The three unpublished decisions were not available until after this matter was briefed and argued.

1 | 418 B.R. at 637-40.

2  The competing arguments and the supporting analysis are well documented in the
3 above cases and need not be repeated here. After considering both sides, this court is
4 persuaded that the decision should be based on an analysis of the underlying statutes and
5 not on speculation over legislative intent. Congress specifically designated several
6 exclusions from CMI. The Trustee is correct in his contention that if Congress had
7 intended to exclude state-funded unemployment benefits from the Bankruptcy Code's
8 definition of CMI, it could have expressly done so. Congress did not make a mistake and
9 it is not for this court to presume so or try to fix it. It is fundamental that, "[i]f Congress
10 enacted into law something different from what it intended, then it should amend the
11 statute to conform it to its intent. 'It is beyond our province to rescue Congress from its
12 drafting errors, and to provide for what we might think . . . is the preferred result.'"
13 *Lamie v. United States Trustee (In re Lamie)*, 540 U.S. 526, 542, 124 S.Ct. 1023, 157
14 L.Ed.2d 1024 (2004) (citing *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct.
15 1259, 127 L.Ed.2d 611 (1994)). Based on thorough and well-reasoned analysis in *Baden*
16 and *Kucharz* and their progeny, this court is persuaded that California unemployment
17 benefits are not "benefits received under the Social Security Act" and that UIB income
18 should be included in the initial calculation of CMI.

19  Before concluding, it is important to note that this matter was briefed and
20 submitted before the U.S. Supreme Court issued its decision. *Hamilton v. Lanning*, 130
21 S.Ct. 2464 (2010). It is now firmly established that the calculation of CMI is not
22 necessarily tied to prepetition conditions (such as Mrs. Ormonde's unemployment status)
23 and the court may take into consideration postpetition changes in the Debtors' income and
24 expenses "that are known or virtually certain at the time of confirmation." *Id.* at 2478.
25 By its very nature, the Debtors' receipt of unemployment compensation is a temporary
26 condition. By now, Mrs. Ormonde may be gainfully employed, or her unemployment
27 compensation may have terminated. Based on this ruling, the Debtors will need to amend
28 their Means Test to properly include the UIB in their CMI. However, when they return to

7

court to confirm a modified plan, the court anticipates that the Trustee's approval, or rejection, of that modified plan will take into consideration the principals in *Lanning*. Alternatively, the court leaves open the possibility that the parties may now be able to reach a compromise solution and proceed with confirmation of this plan without the need for further litigation.

**Conclusion.**

Based on the foregoing, the Trustee's objection to confirmation will be sustained. Confirmation of this plan will be denied unless the parties are able to reach a compromise based on the Debtors' current financial situation and the principals stated in *Lanning*. In that event, the parties may submit a confirmation order which clearly reflects the terms of the compromise.

Dated: August _____ 4 _____, 2010

W. Richard Lee
United States Bankruptcy Judge